Mario Pittoni, J.
The petitioners have brought this proceeding under article 78 of the Civil Practice Act for a review of the action of the State Commissioner of Mental Hygiene in acquiring approximately 500 acres of land as a site for a school for retarded children, pursuant to subdivision 1 of section 46 of the Mental Hygiene Law, and to annul his determination. The Commissioner moves to dismiss the petition for failure to state facts sufficient to entitle the petitioners to any of the relief prayed for therein.
There are three groups of petitioners: Albert Brent, as chairman of the Citizens Planning Council of Huntington, an unincorporated association of representatives of various civic *1064 associations in the Town of Huntington; the Giambalvos, as owners of land within the acquired site; and the Bermans, as owners of land in the immediate vicinity of the site in issue.
Albert Brent, as chairman of the Citizens Planning Council, has no standing to maintain this proceeding; there is no allegation that the council or the associations he represents own any property that may be adversely affected by the Commissioner’s action (Point Lookout Civic Assn. v. Town of Hempstead, 22 Misc 2d 757; Twenty-One White Plains Corp. v. Village of Hastings-on-Hudson, 14 Misc 2d 800; Deligtisch v. Town of Greenburgh, 135 N. Y. S. 2d 220, 223; Feldman v. Nassau Shores Estates, 12 Misc 2d 607, affd. 7 A D 2d 757; Property Owners Assn. v. Board of Zoning Appeals, 2 Misc 2d 309).
The petition alleges that the appropriated property is surrounded by residential communities; that the institution will cause increased traffic hazards and inconveniences; that the required power station, incinerator with smokestack and other auxiliary facilities will deposit noxious emissions on the bordering properties; that increased fire and police protection will be required for the surrounding communities; that increased sewer and water burdens will be imposed on these communities; that the erection of the school in the midst of a residential community will substantially decrease the values of adjacent properties; that the school will be maintained not only for children but also for the mentally retarded who are chronologically older; that there will be no physical restraints upon the retarded persons, such as fences, gates and the like; that the school will induce constant and continuing tension, anxiety and fear among the area’s inhabitants and will have deleterious effects upon their children; that the Commissioner appropriated this particular site despite the availability of commensurate acreage just as suitable for the purposes of this school, but not surrounded by any residential communities and without deleterious effects upon the surrounding communities; that available alternate sites could be acquired at lower prices; that nevertheless, the Commissioner arbitrarily and unreasonably acquired this site; that the State now owns unused land suitable for the purposes of this school, and adjacent to Pilgrim State Mental Hospital; that there is now an extreme concentration of institutions for the mentally ill in the vicinity of this site; that the removal of additional acreage from the tax rolls will unduly increase the tax burdens of the local property owners; that the selection of this particular site was opposed by town officials and civic associations in the area; that despite all these reasons and oppositions the Commissioner acquired this site without a public *1065 hearing and without any announced findings or reasons for the choice of this site; that the Commissioner’s determination to acquire the present site was arbitrary, capricious and unreasonable ; and that section 46 of the Mental Hygiene Law is unconstitutional both under the State and Federal Constitutions.

The Power Of This Court To Review The Commissioner’s Determination In This Proceeding

The first question to be decided is whether the Commissioner’s determination may be reviewed in this article 78 proceeding. The answer is positive. Section 4 of article XVII of the New York State Constitution places a responsibility upon the Commissioner for the care and treatment of the State’s mentally retarded; and subdivision 1 of section 46 of the Mental Hygiene Law grants him the power and duty of acquiring for the State “ any real property which he may deem necessary for the purpose of a state institution by purchase or by appropriation ”. Thus the Commissioner had the power and he did exercise discretion when he made his selection and determination. Article 78 (§ 1284, subd. 2) of the Civil Practice Act, states in part, ‘ ‘ The expression ‘ to review a determination ’ refers to * * * the review of any act * * * of a body or officer exercising * * * functions, which involves an exercise of judgment or discretion ”. (See Matter of Murray v. La Guardia, 291 N. Y. 320; Kaskel v. Impellitteri, 306 N. Y. 73.) It follows that an article 78 proceeding is available to review his determination.
The next question is to what extent may the court review the Commissioner’s action. There are many decisions that seem to say that the necessity for the appropriation of public lands is a legislative function and that the Legislature is the sole judge of the necessity unless otherwise expressed. (See, e.g., North Laramie Land Co. v. Hoffman, 268 U. S. 276, 284; Matter of Public Serv. Comm., 217 N. Y. 61, 67; Matter of Deansville Cemetery Assn., 66 N. Y. 569, 572; Matter of Fowler, 53 N. Y. 60, 62; People ex rel. Herrick v. Smith, 21 N. Y. 595, 598.) However, the rule mentioned in these cases does not preclude a judicial inquiry to determine whether the taking is based upon some corrupt, unworthy or malicious baseless motive, not in good faith, and not in interest of the public (People v. Fisher, 190 N. Y. 468, 477; Kaskel v. Impellitteri, 306 N. Y. 73, 78, 80, supra; Matter of New York Harlem R. R. Co. v. Kip, 46 N. Y. 546, 553; Cuglar v. Power Auth., 4 Misc 2d 879, 897, affd. 4 A D 2d 801, affd. 3 N Y 2d 1006; Saso v. New York, 20 Misc 2d 826; Tennessee Val. Transmission Co. v. Geng, 11 Misc 2d 739; Matter of Port of N. Y. Auth. [Lincoln Tunnel], 202 Misc. 1104; *1066 see, also, 18 Am. Jur., Eminent Domain, §§ "107, 91; 29 C. J. S., Eminent Domain, p. 886).

The Arguments Analysed

Pursuant to the respondent Commissioner’s motion to dismiss the petition, all allegations of fact in that document are deemed to be true, insofar as relevant and material under the issues reviewable by the court (Matter of Hines v. State Bd. of Parole, 293 N. Y. 254, 258).
However, the factual allegations in the petition fail to show or state that the Commissioner’s taking was based in any way upon some corrupt, unworthy, baseless or malicious motive, or that it was in bad faith, or that it was not in the interest of the public.
The petition complains of the expected increase in traffic, emissions of smoke, increased need for fire and police protection, increased need for sewerage and water facilities, psychological effect upon the neighboring residents, the objections of public officials and civic associations and the availability of other suitable sites. However, these objections do not show that the Commissioner was impelled by any of the improper motives outlined above as the test for reviewing and annulling his determination.
Then too, the petition admits that the creation of a school for retarded children is for a public purpose. Even if it did not, this court would be required to judicially notice the fact that the State and the Commissioner are exercising one of the most important public functions — the care, treatment and training of those of its children who have not been blessed with normal mentality, those of its children who through no fault of their own are mentally retarded, those of its children who need the greatest assistance. The State has an obligation to raise these children to greater mental and emotional stature, and to make them, if possible, normal, useful, happy persons, equal to the other millions of children whom it trains every year.
The objection that other and more suitable sites are available is merely an allegation that the judgments of the petitioners, and perhaps of experts retained by them, should prevail over that of the Commissioner and his advisors. But the Commissioner is the person invested by law with the duty of decision. This objection is untenable and is answered by its mere repetition.
The further objection that due process of law was wanting as no public hearing was held and no findings were made as to the taking is also insufficient. The right of eminent domain is inherent in the State; and the Federal and State Constitutions *1067 merely require that the taking be for a public purpose and that there be the payment of just compensation in accordance with substantive and procedural due process of law. This means that after such taking the property owner shall be given reasonable notice and reasonable opportunity to be heard on the question of compensation and damages at some reasonable stage of the eminent domain proceeding. (Bragg v. Weaver, 251 U. S. 57, 62; People v. Adirondack Ry. Co., 160 N. Y. 225, affd. 176 U. S. 335; 17 Carmody-Wait, New York Practice, § 8, pp. 151-152.) This requirement is satisfied by the hearing or trial on the issue of compensation and damages permitted in the Court of Claims, if no compromise as to the amount has been effected between the Commissioner and the owner (Mental Hygiene Law, § 46, subd. 13; Court of Claims Act, §§ 9, 10, 16, 20). Nor do the due process clauses require a public hearing or findings of fact when the State through a duly constituted State official exercises its right and power of eminent domain (North Laramie Land Co. v. Hoffman, 268 U. S. 276, 284, supra; Bragg v. Weaver, 251 U. S. 57, supra; Matter of Public Serv. Comm., 217 N. Y. 61, 66, 67, supra; People v. Adirondack Ry. Co., 160 N. Y. 225, affd. 176 U. S. 335, supra).
The objections that the erection of the proposed school will decrease the values of the adjacent properties, and that the removal of the school’s acreage from the tax rolls will unduly increase the tax burdens of the local property owners, and the other objections based on depreciation of the values of adjacent properties must also fail. It is not an effective argument that the action of the State may cause depreciation of property values, when such action is for the public welfare. (Rodgers v. Village of Tarrytown, 302 N. Y. 115, 126; Shepard v. Village of Skaneateles, 300 N. Y. 115, 120; Matter of Wolfsohn v. Burden, 241 N. Y. 288, 302.) In the Bodgers case the court said: “ While hardships may be imposed on this or that owner, ‘ cardinal is the principle that what is best for the body politic in the long run must prevail over the interests of particular individuals. ’ ’ ’
It is pertinent to point out that in the Diocese of Rochester v. Planning Bd. case (1 N Y 2d 508), the New York Court of Appeals was presented with many issues similar to the ones now under consideration. In that zoning case the court rejected the various contentions raised to prevent a parochial school from locating in a residential district. The high public purpose and the sociological value of the proposed school for retarded children put the present case within the principles of the Diocese case.
*1068 Many of the objections raised by the petitioners could be advanced by any other property owners in any other part of the State. If they were held valid the effect would be to completely bar any such school for retarded children, as now' contemplated.
Other arguments advanced by the petitioners have been considered and are disposed of by the thoughts expressed above.
Thus, the petition has failed to allege that the Commissioner’s actions were in any way baseless, corrupt, unworthy, malicious or in bad faith, or that they were not in the interest of the public. It follows that this court may not interfere with the Commissioner’s actions herein. The petition is dismissed.