Van Voorhis, J.
This case is in a sense the converse of New York State Thruway Auth. v. Ashley Motor Court (10 N Y 2d 151) upholding the constitutionality of section 361-a of the Public Authorities Law, enacted in 1952, prohibiting the erection of any billboard or other advertising device located within 500 feet of the nearest edge of the Thruway pavement without a written permit from the Thruway Authority. The enactment of that section was held to be a lawful exercise of the police power of the State in the interest of public safety. The appeal in the case now under consideration concerns whether under section 30 of the Highway Law the State may condemn on payment of just compensation property rights in the form of negative easements in case of other State highways, the exercise of which it prohibits altogether without compensation under section 361-a of the Public Authorities Law in case of the Thruway. We are here dealing with a portion of Route 17 in Sullivan County. It is a limited-access highway, and, as the State asserts, it is similar in nature to the portion of the Thruway involved in the Ashley case. But section 361-a of the Public Authorities Law applies only to the Thruway, and not to Route 17. Section 675 of the Conservation Law prohibits the erection or maintenance of advertising signs within 500 feet of the border of any State park or parkway, but such is not Route 17. Section 569-b of the Public Authorities Law prohibits certain types of advertising signs within 500 feet of the Whitestone Bridge project or the Brooklyn Battery Tunnel project, or their approaches and connections, but this does not apply to Route 17. Having failed to get authority from the Legislature to control outdoor advertising along State highways generally through bills which were introduced but failed of passage in 1952, 1957, 1959 and again in I960*, the Superin *255 tendent of Public Works of the State decided that the State could condemn a negative easement which, in effect, would eliminate on payment of compensation what the other statutes mentioned prohibit under the police power without payment of compensation. Of course under the decision in New York State Thruway Auth. v. Ashley Motor Court (supra) if any of the statutes just enumerated in the footnote had been passed, no compensation would need to be paid in order to prohibit the erection of advertising signs along any State highway including the portion of Boute 17 in Sullivan County that is involved upon this appeal.
In any event section 30 of the Highway Law appears not to have been designed or intended to authorize the condemnation of easements of this character. As is stated in the dissenting opinion at the Appellate Division by Mr. Justice Herlihy, it is clear that the amendment of section 30 by chapter 544 of the Laws of 1944 was adopted in order to transfer the exercise of the power of eminent domain for the construction of State highways from the various counties of the State to the Superintendent of Public Works. It had become unwieldly for the State to depend on co-ordinating the action of many counties in the construction of State thoroughfares, and the Legislature deemed it was desirable and necessary to concentrate the power of eminent domain in the State Superintendent of Public Works. This was the dominant purpose of the amendment. The Deputy Chief Engineer (Highways) stated in the annual report of the Superintendent of Public Works for the year 1944: “ This is the first time it has been possible for this Department to promulgate any definite highway programs because of the fact that heretofore the consummation of any program which might be instituted by the Department was entirely dependent upon the willingness and ability of the counties to acquire the necessary rights of way for the construction of the improvements. This insurmountable object to a planned program of work was eliminated in 1944 through the enactment of legislation which provides that the State shall acquire title to all rights of way needed in connection with State highway construction.” (N. Y. Legis. Doc., 1945, No. 60, pp. 40-41; see, also, pp. 4, 23-25.)
Statutes conferring the power of eminent domain are not extended by inference or implication (McKinney’s Cons. Laws *256 of N. Y., Book 1, Statutes, § 293, pp. 335-336; Society of New York Hosp. v. Johnson, 5 N Y 2d 102,107; Ontario Knitting Co. v. State of New York, 205 N. Y. 409, 416).
The language of section 30 of the Highway Law, as thus amended in 1944, is as follows: ‘ ‘ The superintendent of public works, for and in behalf of the people of the state of New York may acquire by appropriation any and all property [including easements] necessary for the construction, reconstruction and improvement of state highways and bridges or culverts on the state highway system, including the appropriation of property for drains, ditches, spoil banks, gravel pits and stone quarries; also for the removal of obstructions, improvement of sight distances; also for appropriation of property for the reconstruction of existing highway-railroad separation structures and for the separation of highway-railroad grades on newly laid-out highways; and for other purposes to improve safety conditions on the state highway system.” (Italics supplied.)
The reference to these specific adjuncts such as drains, ditches, gravel pits and stone quarries, which the Superintendent is authorized to condemn in conjunction with highways, indicates the probable scope of the accompanying language on which the State relies, viz., “ and for other purposes to improve safety conditions on the state highway system.” In People v. Bell (306 N. Y. 110, 115), the following was quoted from McKinney’s Consolidated Lavra of New York (Book 1, Statutes [1942 ed.], § 239): “ ‘ Where words of specific or inevitable purport are followed by words of general import the application of the last phrase is generally confined to the subject matter disclosed in the phrases with which it is connected; for it is known by the company it keeps; and though it might be capable of a wider significance if found alone, it is limited in its effect by the words to which it is an adjunct. It may strengthen the general structure, but it cannot exceed the original outline. ’ ” This is known as the rule of ejusdem generis in statutory construction, and the reference to acquiring land to improve safety conditions on the State highway system was apparently intended to apply to analogous aspects to those which are specifically enumerated, rather than to confer a broad and general power to prohibit advertising signs capable of being seen by persons of normal visual acuity from the adjacent State highway—in the present *257 instance 900 feet away, Such a power is nowhere mentioned in the statute. The elaborate regulation adopted by the Superintendent attempting to prohibit the erection of such signs contains provisions that could not on any theory be supported by the slender foundation afforded by the single phrase that has been quoted from section 30 of the Highway Law. Thus one of the provisions (subd. [j], par. [1]) prohibits signs advertising activities that are illegal under Federal, State or local laws or regulations in effect at the location. Whether the activity which is advertised by the display sign is legal or illegal has no relation to the aspect of the public safety which is adduced to support this regulation of the State Superintendent. The attention of the motoring public is dangerously diverted or otherwise without regard to whether the sign to which motorists’ attention is attracted advertises some activity that is permitted or forbidden by law. Neither is it relevant to the public safety whether signs are painted on trees or drawn upon rocks or other natural features as provided by subdivision (g), or whether the signs are clean and in good repair (subd. [j], par. [3]).
The practical construction of section 30 of the Highway Law by those charged with its enforcement since 1944 has been adverse to the holding below. Never before has the Superintendent of Highways asserted authority to condemn for the elimination of advertising signs, but, on the contrary, many attempts have been made to obtain legislation conferring this power which have been defeated in the Legislature.
However desirable it might be to have such a power as this vested in the State Superintendent of Highways, we are not at ■ liberty to prefer our own ideas of public policy ahead of the expression of the Legislature on this subject. The very existence of statutes regulating or prohibiting display advertising signs on the Thruway, on State parks or parkways, or in conjunction with the Triborough Bridge Authority projects, and the four abortive attempts to obtain such legislation in the case of State highways generally, indicates that the same power has not been conferred by section 30 of the Highway Law.
The judgment of the Appellate Division should be reversed, with costs, and that of the trial court reinstated.

 1952 Assembly Int. Nos. 1308, 1309, Pr. Nos. 1337, 1328; 1957 Assembly Int. No. 4179, ,Pr. No. 4968; 1969 Senate Int. & Pr. No. 725; 1959 Assembly Int. Nos. 1441, 3815, 3894, Pr. Nos. 1444, 3960, 4039; 1960 Senate Int. No. 1197, Pr. Nos. 1200, 1571.