Luther KNIGHT, Plaintiff-Appellant,

v.

STATE OF NEW YORK, Defendant-Appellee.

No. 735, Docket 35352.

United States Court of Appeals,
Second Circuit.

Argued April 20, 1971.

Decided May 12, 1971.

William E. Easton, Rochester, N. Y. (Easton & Bittker, Rochester, N. Y., of counsel), for plaintiff-appellant.

Jeremiah Jochnowitz, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of New York, and Ruth Kessler Toch, Sol. Gen., of counsel), for defendant-appellee.

Before FRIENDLY and ANDERSON, Circuit Judges, and LEVET, District Judge.[*]

FRIENDLY, Circuit Judge:

This action in the District Court for the Western District of New York results from the procedure under § 30 of New York's Highway Law, McKinney's Consol. Laws, c. 25, whereby title to property which the commissioner of transportation deems necessary for the construction or reconstruction of state highways vests in the State immediately upon the filing of a description and map of the property to be appropriated in the office of the county clerk or register of the county in which the property is situated,[1] without any prior judicial proceeding such as that prescribed for other types of condemnation by Article 2 of the Condemnation Law, McKinney's Consol.Laws, c. 73.

Plaintiff, Luther Knight, a resident of Queenstown, Maryland, brought this action against the State of New York apparently late in 1969. He alleged he was the owner of 101 acres of land in the Town of Greece, Monroe County and that, on or about February 6, 1968, the State "attempted to appropriate" 81 of these acres by filing a notice of appropriation and a map in the County Clerk's office. He further alleged that no notice of appropriation or similar document was served upon him either personally or by mail, although the notice of appropriation showed his address as Queenstown, Maryland, and he would receive mail so addressed; and that on or about July 9 the State attempted to serve notice of the appropriation upon him by filing and recording "a document," presumably the certificate described in § 30, subd. 11 of the Highway Law. The complaint went on to allege that the appropriation was for a section of the Rochester Outer Loop

---

[*] Of the District Court for the Southern District of New York, sitting by designation.

1. Section 30, subd. 6 provides in relevant part as follows:

A copy of such description and map shall be filed by the superintendent of public works in the office of the county clerk or register of each county in which such property, or any portion thereof, is situated and thereupon the appropriation by the state of the property described in such description and map shall be deemed complete and the title to such property shall be vested in the people of the state of New York. Section 30, subd. 1(b) provides that, in the case of major projects, there shall be a prior submission to the county board of supervisors, which is permitted but not required to conduct a public hearing on reasonable notice to the State and "to such other party or parties deemed by said board of supervisors to be interested in the project." Section 30, subd. 10 requires the commissioner of transportation to cause a copy of the description, map and notice of appropriation to be served personally on each owner certified to him by the attorney-general "if the person to be served can be found within the state." If he is unable to effect such service "after making an effort so to do which he shall deem to be reasonable and proper," he is directed to file a certificate to that effect in the office of the county clerk who then effects service by filing and recording the description, map, and notice of appropriation and indexing the same in his deed index book. The two year period for filing a claim for compensation in the New York Court of Claims runs from personal service or, if personal service cannot be made within the state, from the filing of the description and map and the recording of the filing. Court of Claims Act, § 10, subd. 1. If, after the vesting, the commissioner deems it necessary to cause the removal of an owner or other occupant, he must proceed by petition as would a landlord seeking to oust a tenant holding over after expiration of his term without permission, § 30, subd. 12. The propriety of the taking could probably be raised as a defense in such a proceeding.

leading to Lake Ontario State Highway; that the project is funded in part with monies furnished by the United States; that a strip not in excess of 400 feet in width sufficed for the Loop except where areas were needed to provide access and that no more than this had been taken both to the south and the north of Knight's property; that, on reaching this, the State "abruptly enlarged its appropriation to widths varying from over 900 feet to over 2,000 feet, depending upon the amount of plaintiff's property available"; and that plaintiff had been left with a strip 40 feet wide and over 2000 feet long without any access to a public highway. On the basis of these claims Knight asserted that the appropriation "was not for a public purpose, was arbitrary, capricious and in bad faith and for the purpose of depriving plaintiff of the use of said property and not for any legitimate public purpose." The prayer was that the court set aside the appropriation, or set aside so much thereof as was not related to the public use and fix compensation for the part properly taken.

The State moved to dismiss, alleging that the court lacked jurisdiction of the subject matter and of the person of the defendant, and that the complaint failed to state a claim upon which relief could be granted. Before the hearing date Knight made a motion to amend the complaint to add as a defendant Theodore W. Parker, the State Commissioner of Transportation.[2] The district court denied Knight's motion and granted that of the State, declaring "The proper forum for claims that the state has wrongfully appropriated land is the New York State Court of Claims."[3]

I.

Knight's action against the State fell within the literal prohibition of the Eleventh Amendment. The view, apparently held by Chief Justice Marshall, see Cohens v. Virginia, 19 U.S. (6 Wheat.), 264, 383, 392, 407, 5 L.Ed. 257 (1821), that the Amendment was directed only to the clause of Article III permitting Congress to vest the federal courts with jurisdiction over controversies "between a state and citizens of another state" and not to the clause relating to "all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their au-

2. In 1967, Laws c. 717, § 51, all functions and powers of the superintendent of public works which pertained to the Highway Law were transferred to the commissioner of transportation. See Transportation Law, McKinney's Consol.Laws, c. 61–A, § 14, subd. 26.

3. While we should not read the relevant statute as giving the Court of Claims jurisdiction to determine the propriety of the taking, as distinguished from the fixing of compensation, Court of Claims Act, § 9, subd. 2, the State argues that an unreported opinion does so hold. Idylbrook Farms, Inc. v. State, aff'd without opinion, 22 A.D.2d 761, 253 N.Y.S.2d 747 (4th Dep't 1964). Examination of the opinion indicates it does not go quite so far as the State contends; it held only that a reservation purporting to limit the right of access from land formerly abutting a relocated highway to the period in which the retained land should be used "for retail store purposes" was a nullity since § 30 of the Highway Law gave no authority to limit the character of an owner's easement of access. While there is language to the effect that the Court of Claims may award equitable relief when incidental to a claim for a money judgment, see Pearlman v. State, 18 Misc.2d 494, 191 N.Y.S.2d 422 (Ct.Claims 1959), this incidental equitable jurisdiction appears to be quite limited—e. g., awarding restitution incidental to a contractual claim, Pearlman v. State, *supra*. Since the Court of Claims has no independent equitable jurisdiction, see Mowers v. State, 168 Misc. 651, 6 N.Y.S.2d 408 (Ct.Claims 1938), it has been held that a suit to rescind a bid for a state contract and obtain an injunction for return of the funds cannot be maintained in that court. Psaty v. Duryea, 282 App.Div. 94, 121 N.Y.S.2d 703 (3d Dep't 1953) aff'd, 306 N.Y. 413, 118 N.E.2d 584 (1954); cf. Tompkins v. State, 33 Misc.2d 828, 227 N.Y.S.2d 475 (Ct.Claims 1962) (court awards damages for nuisance but says it lacks jurisdiction to issue an injunction against the state as well).

thority," was rejected long ago. Louisiana ex rel. Elliott v. Jumel, 107 U.S. 711, 2 S.Ct. 128, 27 L.Ed. 448 (1883); Hagood v. Southern, 117 U.S. 52, 6 S.Ct. 608, 29 L.Ed. 805 (1886); In re Ayers, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216 (1887). Indeed, the Court has read the amendment as going beyond its language and has prohibited suit against the state, on constitutional grounds, by one of its own citizens, Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

Knight's reliance on the decision of a closely divided Court in Parden v. Terminal Railway of the Alabama State Docks Department, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), as taking his suit against the State outside the bar of the Eleventh Amendment, is misplaced. That case held that when Alabama entered the interstate railroad business, nearly twenty years after enactment of the Federal Employers' Liability Act, 35 Stat. 65 (1908), subjecting every "common carrier by railroad * * * engaging in commerce between any of the several States" to suits, in federal and state courts, for injuries to employees caused by negligence, it waived its Eleventh Amendment immunity *pro tanto*. Assuming that the highway project here at issue received federal aid under the Federal Highway Act, 23 U.S.C. § 101 et seq., we find nothing in that legislation that could be read as requiring a benefiting state to waive its immunity from suit in federal court for an allegedly illegal taking. See Citizens Committee for Hudson Valley v. Volpe, 297 F.Supp. 809 (S.D.N.Y. 1969); DeLong Corp. v. Oregon State Highway Comm., 233 F.Supp. 7 (D.Or.1964), aff'd, 343 F.2d 911 (9 Cir.), cert. denied, 382 U.S. 877, 86 S.Ct. 161, 15 L.

Ed.2d 119 (1965). Apart from the circumstances in *Parden* that plaintiff was suing on a cause of action expressly created by Congress with the intention, so the Court found, of conditioning the right to operate an interstate railway upon amenability to employees' suits in the federal courts, the decision was doubtless influenced by the fact that the state was engaging in activity, constitutionally subject to congressional regulation, which was generally performed by private persons or corporations, 377 U.S. at 196–198, 84 S.Ct. 1207. Highway construction, by contrast, is a distinctly governmental function.

The parties have not mentioned, in their exceedingly unhelpful briefs, a stronger basis for exempting this action against the State from the Amendment insofar as the complaint seeks to nullify the appropriation in whole or in part. Article 15 of the New York Real Property Actions and Proceedings Law, McKinney's Consol.Laws, c. 81, contains broad authorization for actions to determine claims to "an estate or interest in real property," and § 1541 permits such an action to be maintained "by or against the people of the state of New York." Article 15 proceedings have been held to be a proper means for a landowner to contest the appropriation of his land on the ground that the taking was not for a public use. See Buell v. Genesee State Park Comm., 25 Misc.2d 841, 206 N.Y.S.2d 65 (Sup.Ct. Monroe County 1960); cf. City of Albany v. McMorran, 34 Misc.2d 304, 230 N.Y.S.2d 421 (Sup.Ct., Albany County) rev'd on other grounds, 16 A.D.2d 1021, 230 N.Y.S.2d 438 (3d Dep't 1962).[4] The availability of this remedy eliminates the concern, which we voiced at argument, over a situation where a state took property with-

---

4. Since such an action would seem to fall under the 10-year period of limitations provided in CPLR § 212(a), cf. Real Property Actions and Proceedings Law § 311, Knight is still in a position to bring this type of suit. See Low v. People, 263 App.Div. 434, 33 N.Y.S.2d 1015 (3d Dep't 1942) (holding this to be the proper period of limitations under article 15 of the old Real Property Law and § 34 of the old Civil Practice Act); 16 Carmody Wait 2d New York Practice, § 101.8, at 606; cf. New York Water Service Corp. v. Palisades Interstate Park Comm., 12 A.D.2d 646, 208 N.Y.S.2d 460 (2d Dep't 1960), appeal denied, 12 A.D.2d 817, 211 N.Y.S.2d 706 (1961).

out a judicial proceeding and afforded no forum for the owner's testing the issue of public use. However, it is settled law that a state may "give its consent to be sued in its own courts by private persons or by corporations, in respect of any cause of action against it and at the same time exclude the jurisdiction of the Federal courts—subject always to the condition, arising out of the supremacy of the Constitution of the United States and the laws made in pursuance thereof, that the final judgment of the highest court of the state in any action brought against it with its consent may be reviewed or re-examined, as prescribed by the act of Congress, if it denies to the plaintiff any right, title, privilege, or immunity secured to him and specially claimed under the Constitution or laws of the United States." Smith v. Reeves, 178 U.S. 436, 445, 20 S.Ct. 919, 922, 44 L.Ed. 1140 (1900). The question thus becomes one of interpreting the consent given in § 1541 of the Real Property Actions and Proceedings Law. While we have found no New York decision on the point, the Supreme Court has admonished that federal courts ought not "to be astute to read the consent to embrace Federal as well as state courts" and that only a "clear indication" of the state's intention to submit to suit in federal courts will surmount the Eleventh Amendment's bar, Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 54, 64 S.Ct. 873, 877, 88 L.Ed. 1121 (1944). See, to the same effect, Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 465–466, 65 S.Ct. 347, 89 L.Ed. 389 (1945); Kennecott Copper Corp. v. State Tax Comm., 327 U.S. 573, 577, 66 S.Ct. 745, 90 L.Ed. 862 (1946). We find no such "clear indication" here.

## II.

The question whether the court properly denied leave to amend so that the suit might proceed against the commissioner of transportation is considerably more difficult. It may be useful to begin by narrowing the frame wherein the issue falls. It is altogether plain that if the appropriation had been effected by a suit instituted by the State and Knight had raised the issue of public use, or if he had presented that issue by bringing a proceeding against the State under Article 15 of the Real Property Actions and Proceedings Law, a judgment against him would be subject to review by the Supreme Court. Missouri Pacific Ry. Co. v. Nebraska, 164 U.S. 403, 17 S.Ct. 130, 41 L.Ed. 489 (1896); Rindge Co. v. Los Angeles County, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186 (1923); Smith v. Reeves, *supra.* It is equally clear that, under the doctrine of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a person in Knight's position could have sued for an injunction in the federal courts, in advance of the taking, to restrain the commissioner from effecting the appropriation on the ground that this was not for a public use, although the court might perhaps have abstained if state proceedings would afford adequate relief. See Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S. Ct. 1070, 3 L.Ed.2d 1058 (1959), and Martin v. Creasy, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186 (1959), but contrast County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). See C. Wright, Federal Courts 200–01 (2d ed. 1970). The question is whether the Eleventh Amendment demands a different result when the owner does not sue the officer in federal court until after title has vested in the state.

Most of the Supreme Court's decisions dealing with the application of sovereign immunity to suits against officers alleged to be holding property illegally taken have related to federal officials. No useful purpose would be served by a complete review; the Court itself has recognized that "to reconcile completely all the decisions of the Court in this field prior to 1949 would be a Procrustean task," Malone v. Bowdoin, 369 U.S. 643, 646, 82 S.Ct. 980, 983, 8 L.Ed.2d 168 (1962). Nineteen forty-nine was the date of what many regard as the unfor-

tunate *opinion of Chief Justice Vinson* in Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628. The *Larson* Court said there were only two types of cases in which "suits for specific relief against officers of the sovereign" would not constitute "suits against the sovereign," 337 U.S. at 689–691, 69 S.Ct. at 1461. "[W]here the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions"; so also when "the power has been conferred in form but the grant is lacking in substance because of its constitutional invalidity," an action may be maintained. The approving quotation from Mr. Justice Hughes' opinion in Philadelphia Co. v. Stimson, 223 U.S. 605, 620, 32 S.Ct. 340 (1912), and also the extract from the *Larson* opinion quoted in fn. 5, *infra,* make clear that the second category embraces cases where the statute is constitutional (in the *Stimson* case, preserving the navigability of a river) but the particular application is claimed not to be.

If the *Larson* opinion had stopped there, it would occasion no difficulty to Knight since his claim is of the latter sort. However, the Court immediately qualified its statement by saying in a footnote:

> [11] Of course, a suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative *action by the sovereign or* the disposition of unquestionably sovereign property. North Carolina v.

Temple, 1890, 134 U.S. 22, 10 S.Ct. 509, 33 L.Ed. 849 (1890).[5]

The *Larson* footnote has become the subject of microscopic scholarly scrutiny. Professor Jaffe has seized on the use of "may" rather than "must" and notes that the *Temple* case cited in the footnote was a suit to require the state to levy taxes to fund bonds, an action lying at the very core of the Eleventh Amendment prohibition. He points out also that, if taken literally, the language would overrule a long line of decisions providing mandamus to order the grant of a patent to lands of the United States. Judicial Control of Administrative Action 226–27 (1965); cf. West Coast Exploration Co. v. McKay, 93 U.S.App.D. C. 307, 213 F.2d 582, cert. denied, 347 U.S. 989, 74 S.Ct. 850, 98 L.Ed. 1123 (1954). Whatever the merits of this position and of the even broader assaults of Professor Davis, Administrative Law Treatise, 1970 Supp., ch. 27, the Court has not shown itself disposed to narrow *Larson.* In Malone v. Bowdoin, *supra,* it reaffirmed that opinion's statement that United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171 (1882), had "continuing vitality only 'where there is a claim that the holding constitutes an unconstitutional taking of property without just compensation,'" 369 U.S. at 648, 82 S.Ct. at 983–984, citing 337 U.S. at 697, 69 S.Ct. 1457. In Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963), the Court stated the "general rule" to be

> that a suit is against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration," * * * or if the effect of the judgment would be "to restrain the Government from acting, or to compel it to act."

5. While the Court said, later in the opinion, that "the action of an officer of the sovereign (be it holding, taking or otherwise legally affecting the plaintiff's property) can be regarded as so 'illegal' as to permit a suit for specific relief against the officer as an individual only if it is not within the officer's statu-

tory powers or, if within those powers, *only if the powers, or their exercise in the particular case, are constitutionally void,"* 337 U.S. at 701–702, 69 S.Ct. at 1467 (emphasis supplied), we do not read this summary as retracting the footnote.

See also Fresno v. California, 372 U.S. 627, 83 S.Ct. 996, 10 L.Ed.2d 28 (1963). In Hawaii v. Gordon, 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963), the Court dismissed a suit against the Director of the Budget, seeking to compel him to take certain action with respect to Government land, as being an unconsented suit against the United States since "the order requested would require the Director's official affirmative action, affect the public administration of government agencies and cause as well the disposition of property admittedly belonging to the United States." While none of these cases involved a taking subject to substantial constitutional challenge as not for a public purpose, it does appear that the attack in *Gordon* was based upon the officer's failure to discharge a statutory duty—a challenge which would seem to fall within the first *Larson* exception to sovereign immunity. The Court's failure to note this may suggest that *Larson's* footnote 11 was deemed controlling. In any event, whether or not the Court could qualify note 11 without having to overrule any of these cases, the task of doing so, whether as regards suits against the United States or those encountering the bar of the Eleventh Amendment, is better left to the only body that can speak with authority. We find this course particularly attractive when, as has already been demonstrated and will further appear below, plaintiff has an adequate remedy in the New York courts and a decision by us, only dubiously valid, sustaining federal jurisdiction over a suit against New York of-

ficials would open the way for a host of actions on a subject where the knowledge of local conditions possessed by state courts may be peculiarly important.

It remains to consider certain decisions that might be read to indicate that New York would not view an action against the commissioner of transportation challenging the constitutionality of the taking as a suit against the state. While a state surely cannot increase the scope of its Eleventh Amendment immunity by defining suits against state officers to be actions against the sovereign even though the Supreme Court would not deem them to be such under *Ex parte Young* and its progeny, it could be argued with some force that the converse does not hold. While Knight cannot bring a proceeding under Article 78 of the CPLR to review the commissioner's decision, because the determination of what land to take is deemed legislative in character,[6] New York does permit a declaratory judgment or injunctive suit to challenge the acts of an officer making a legislative determination "on any of the grounds open to judicial review of quasi-legislative decisions, namely, that the [commissioner] acted in disregard of statutory standards, in excess of [his] grant of authority, in violation of due process or in a discriminating manner. [Such an action] may also attack the constitutionality of the statute delegating power to act." Lakeland Water Dist. v. Onondaga County Water Authority, 24 N.Y.2d 400, 301 N.Y.S.2d 1, 6, 348 N.E.2d 855, 858 (1969).[7] There have been a number of cases where New

---

6. The Assistant Attorney General's statement at argument that an Article 78 proceeding against the commissioner would have been the proper way for Knight to have sought relief seems to be clearly wrong. See Brent v. Hoch, 13 A.D.2d 505, 211 N.Y.S.2d 853 (2d Dep't 1961), affirming 25 Misc.2d 1062, 205 N.Y.S.2d 66 (Sup.Ct., Special Term, Suffolk County 1960), on the ground that the commissioner of mental hygiene's determination to acquire real property he deems necessary for a state institution is legislative in character and thus not re-

viewable under Article 78; cf. Schulman v. McMorran, 9 A.D.2d 1007, 195 N.Y.S. 2d 5 (3d Dep't 1959).

7. Since such an action would not be and could not have been brought under Article 78, the four-month statute of limitations relating to such proceedings, CPLR § 217, should not apply; rather the action would be governed by the six-year period for "an action for which no limitation is specifically prescribed by law," CPLR § 213(1). We thus have no occasion to consider whether New York could

**422**

York courts, applying this general principle, have entertained complaints that takings have been beyond statutory authority or constitutional right. See, e. g., Schulman v. People, 10 N.Y.2d 249, 219 N.Y.S.2d 241, 176 N.E.2d 817 (1961) (Real Property Law Article 15 proceeding); Brown v. McMorran, 42 Misc.2d 211, 247 N.Y.S.2d 737 (Sup.Ct. Westchester County 1963) rev'd on other grounds, 23 A.D.2d 661, 257 N.Y.S.2d 74 (2d Dep't 1965); City of Albany v. McMorran, 34 Misc.2d 304, 230 N.Y.S.2d 421 (Sup.Ct., Special Term, Albany County), rev'd on other grounds, 16 A. D.2d 1021, 230 N.Y.S.2d 438 (3d Dep't 1962); Saso v. State, 20 Misc.2d 826, 194 N.Y.S.2d 789 (Supreme Court, Westchester County, 1959).[8] However, in view of the State's explicit consent to be named as a defendant in proceedings under Article 15 of the Real Property Actions and Proceedings Law, it is difficult to determine whether such decisions are to be taken as expressing a less extensive notion of sovereign immunity than the Supreme Court has recognized for federal courts in the *Larson* footnote, or merely as acknowledging that there would be little point in holding sovereign immunity a bar to a declaratory or injunctive suit in a New York court when an Article 15 action which in effect seeks the same relief is allowed. Furthermore even if the decisions conveyed a clearer indication of New York's views on the subject of sovereign immunity than they do to us, there would be the same question, noted in our discussion of Article 15 of the Real Property Actions and Proceedings Law, whether a relinquishment by New York of the full permissible scope of sovereign immunity in actions challenging the validity of condemnations where the plaintiff has not expressly proceeded under Article 15, would extend beyond actions in its own courts.[9]

Affirmed.

constitutionally enforce a four-month statute of limitations for challenging the validity of an appropriation when it had failed to take easily available steps to give personal notice of the taking. The contrary is strongly indicated by such cases as Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Walker v. City of Hutchinson, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956); and Schroeder v. City of New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962).

8. None of these cases is cited or discussed in the briefs.

9. A crowning irony of this ill presented case is that the complaint was clearly subject to dismissal on a ground that apparently did not occur to anyone, namely, its failure to allege that "the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs * * *" required by 28 U.S.C. § 1331(a). The action obviously does not fall within 28 U.S.C. § 1343 (3), so long as Mr. Justice Stone's opinion in Hague v. C. I. O., 307 U.S. 496, 518, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), remains the law in this circuit. See Eisen v. Eastman, 421 F.2d 560, 564–566 (2 Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970). We have written on the assumption that plaintiff could have cured this defect by amendment.