NARRAGANSETT TRIBE OF INDIANS

v.

**Dennis J. MURPHY, Jr.**

Civ. A. No. 75–0005.

United States District Court, D. Rhode Island.

Dec. 1, 1976.

---

Barry Margolin, Boston, Mass., Charles Edwards, Providence, R.I., Thomas N. Tureen, and David Crosby, Calais, Maine, for plaintiffs.

Allen P. Rubine, Asst. Atty. Gen., William Brody, Special Asst. Atty. Gen., Providence, R.I., for defendant.

## OPINION

PETTINE, Chief Judge.

In this case, which has been consolidated for hearing with *Narragansett Tribe of Indians v. Southern Rhode Island Land Development Corp.,* Civil Action No. 76–0006, the Narragansett tribe [hereinafter referred to as plaintiffs] seek possession of certain land held by Dennis J. Murphy, Director of the Department of Natural Resources of the State of Rhode Island [hereinafter referred to as defendant]. Plaintiffs allege that the land in question, located in Charlestown, Rhode Island, has belonged to them since

time immemorial and that defendant is now in possession of that land, contrary to the provisions of the Indian Nonintercourse Act, 25 U.S.C. § 177 (1970).

In previous rulings in this case and in the companion case, this Court has held that plaintiffs have stated a claim upon which relief could be granted, that they are proper parties to bring this action, that the United States need not be made a party, and that certain defenses raised by defendants are insufficient as a matter of law. The Court has also denied motions to dismiss by various defendants based on contentions that plaintiffs' tribe has been dissolved by the state legislature, that plaintiffs lack recognition as a tribe by federal authorities, and that the instant case is an exclusively political question. *Narragansett Tribe of Indians v. Southern Rhode Island Land Development Corp.*, 418 F.Supp. 798 (D.R.I.1976) [*Narragansett I*].

Defendant in C.A. No. 75–0005 now moves to dismiss that case for lack of subject matter jurisdiction. As grounds for this motion, he urges that C.A. No. 75–0005 is an action against the State of Rhode Island and so barred by the Eleventh Amendment, which provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.[1]

 The parties do not disagree about the basic propositions of Eleventh Amendment law. The Amendment preserves the common law doctrine of sovereign immunity, applicable to both federal and state governmental bodies, which shields the sovereign from liability for its wrongful conduct.[2] This immunity cannot be circumvented merely by naming an individual governmental official as party defendant rather than the state itself.[3] *See, e. g., Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Nevertheless, where a governmental official's actions are unconstitutional or exceed his powers, specific relief is available against the officer. *See, e. g., Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 701–702, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Jurisdiction to hear such cases and to grant relief appears to be bottomed on the fiction that an official's *ultra vires* or unconstitutional acts are not really governmental acts at all and therefore relief against the official does not amount to relief against the sovereign. *See* L. Jaffe, Judicial Control of Administrative Action 212. This fiction is maintained even where the relief granted may clearly have a drastic effect upon the public treasury, *see, e. g., Georgia Railroad & Banking Co. v. Redwine*, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952) (injunction against collection of a state tax); or upon other attributes of sovereignty, *see, e. g., Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (enforcement of state statute enjoined).

As a matter of logic, the fiction that such suits are not really "against the government" is relatively easy to maintain when the relief sought is an injunction against future unconstitutional or illegal conduct on

---

1. The Eleventh Amendment's prohibition against unconsented suits against the state has been construed to extend to citizens of the state being sued as well as to citizens of other states. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Likewise, it generally bars suits by Indian tribes as well as by individuals. *United States v. Minnesota*, 270 U.S. 181, 193–195, 46 S.Ct. 298, 70 L.Ed. 539 (1926).

2. Where persons seek to sue the state in federal court, the action is dismissed by virtue of the Eleventh Amendment. When relief is sought against the United States, dismissal is required by the doctrine of "sovereign immunity." In both cases the principles upon which the deci-

sion to dismiss is based are the same, and "federal sovereign immunity" cases are thus authority in "state Eleventh Amendment cases" and *vice versa. See, e. g., Knight v. State of New York*, 443 F.2d 415, 419 (2d Cir. 1970).

3. On the other hand, a state officer, sued in his official capacity, may not, as defendant appears to contend, claim Eleventh Amendment immunity merely because his actions are authorized by state law. *See Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

the part of the named official, as in *Georgia Railroad* and *Fuentes, supra.* Somewhat more difficult are those cases where plaintiff seeks the return of property that has allegedly been wrongfully taken by a government official. In such cases, the court's decree would operate upon property that is in the government's possession and to which the government may claim title. Courts have nevertheless granted this type of relief.[4] *See, e. g., United States v. Lee,* 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171 (1882).

In *Lee,* the descendants of General Robert E. Lee sought the return of certain land that the government intended to use for the National Cemetery at Arlington, Virginia. The land had been purchased on behalf of the United States at a sale that later turned out to be invalid. The Supreme Court's affirmance of the judgment of the court below awarded possession to the plaintiffs against the government officials, but the Court noted that that *title* remained in the United States, because the United States had not consented to be a party defendant in the action, and therefore the judgment could not affect the interest of the United States in the property. *Id.* at 222, 1 S.Ct. 240. This distinction between possession and title thus preserved the fiction that suits are maintainable against officials but not against the sovereign.

The rationale under which the *Lee* plaintiffs established jurisdiction and obtained relief was re-examined and limited by the Supreme Court in *Larson v. Domestic & Foreign Corp., supra.*[5] The narrow holding of *Larson* is simply stated: in order to obtain property alleged to have been wrongfully taken by a government official, a plaintiff cannot merely allege that the taking was mistaken, tortious or in breach of contract; rather, there must be an allegation that the official who took or withheld the property acted unconstitutionally or in excess of statutory authority. *See Larson, supra,* 337 U.S. at 701–702, 69 S.Ct. 1457.

It is at this point that the issue is joined in the present case. Plaintiffs contend that the instant suit, seeking possession of wrongfully withheld property, comes within an exception to the rule of sovereign immunity recognized in *Lee* and reaffirmed in *Larson.* Defendant argues that a close reading of *Larson* makes it clear that the present case does not fit into the *Lee* exception as modified by *Larson* but rather falls within the general Eleventh Amendment proscription and so must be dismissed.

Under defendant's analysis of *Larson,* a suit seeking possession of property against a government official can only be maintained if the complaint alleges a Fifth or Fourteenth Amendment violation (in that the property sought by the plaintiff was unconstitutionally taken without just compensation) or that the official who took plaintiff's property did so in excess of his or her powers. Because plaintiffs do not allege a taking without just compensation and because defendant claims ample authority for his conduct under the statutes of Rhode Island, defendant urges that the *Larson* test is not met and the complaint should be dismissed.

The Court disagrees with this analysis of *Larson.* It is true that *Larson* does contain a statement that

> only where there is a claim that the holding constitutes an unconstitutional taking of property without just compensation does the *Lee* case require [the] conclusion [that a claim of title to property held by an officer is, of itself, sufficient to dem-

---

4. Suits seeking the return of specific property or for prospective relief must be distinguished from suits asking money damages payable out of the public treasury. From these the sovereign is immune. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

5. In *Larson,* the War Assets Administrator had sold certain surplus coal to plaintiff. Subsequently, he refused to deliver the coal and contracted to sell it to others. The propriety of this conduct turned upon the construction of the contract between plaintiff and the Administrator. Plaintiff sought declaratory judgment and an injunction requiring the Administrator to refrain from delivering the coal to anyone besides itself, but the Supreme Court denied relief on grounds of sovereign immunity.

onstrate that the officer holding the property is not validly empowered by the sovereign to do so].

*Larson, supra,* 337 U.S. at 697, 69 S.Ct. at 1465.

However, this statement is made in the context of a discussion of why *Lee* does not stand for the rule that *all* wrongful takings by government officers are excepted from the general rule of sovereign immunity, whether such takings are mistaken, tortious or in breach of contract on the one hand or unconstitutional or in excess of statutory authority on the other.

After its particularized discussion of the *Lee* case, the *Larson* court states the general rule:

> [T]he action of an officer of the sovereign (be it holding, taking or otherwise legally affecting the plaintiff's property), can be regarded as so "illegal" as to permit a suit for a specific relief against the officer as an individual only if it is not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void.

*Larson, supra,* 337 U.S. at 701–702, 69 S.Ct. at 1467.

█ Defendant, in urging the Court to accept his somewhat tortured reading of *Larson* in preference to this very clear statement of the general rule, has not suggested any principled basis upon which unconstitutional takings in violation of the Fifth or Fourteenth Amendments should be distinguished from all other unconstitution-

al actions by government officials. There is no suggestion that the Fifth and Fourteenth Amendments, which forbid property takings without due process, have been exalted to higher status than other constitutional prohibitions or limitations on official power. It is possible, as discussed below, that the question of whether or not property has been seized in violation of the Fifth or Fourteenth Amendments might bear on the propriety of the relief sought, but the Court cannot conceive any reason why an allegation of unconstitutional official action should be in any way affected by the nature of the constitutional limitation relied upon to support such an allegation.[6]

In their complaint, plaintiffs allege that Defendant Murphy keeps plaintiff out of possession of the land described in paragraphs nineteen through fifty-five of this Complaint in violation of 25 U.S.C. § 177, and in excess of his authority under the laws of the State of Rhode Island; or if within the authority vested in him by the laws of the State of Rhode Island, then in violation of Article 1, Section 8, and Article VI of the Constitution of the United States, and 25 U.S.C. § 177.

These allegations are clearly sufficient to meet either branch of the *Larson* test.

The second clause of the above-quoted portion of the complaint alleges that defendant's retention, by authority of state law, of land claimed by plaintiffs, is in conflict with a contrary provision of federal law, 25 U.S.C. § 177 (1970), and so in violation of the Supremacy Clause, U.S.Const., art. VI,

---

**6.** An argument quite similar to that advanced by defendant in the case at bar was raised and rejected in *Great Lakes Inter-Tribal Council v. Voigt,* 309 F.Supp. 60 (W.D.Wis.1970). In that case the plaintiff Indians sought to enjoin enforcement of certain fishing laws of the State of Wisconsin on the ground that the state laws conflicted with plaintiffs' rights under a treaty with the United States. Defendant state officials sought dismissal on Eleventh Amendment grounds. Defendants argued that suits against state officials were permitted under the Eleventh Amendment only where the state law that the officials were enforcing directly conflicted with a federal constitutional provision but not where the state law conflicted with a federal statute or treaty. Judge Doyle rejected this argument, accurately pointing out that it is by virtue of the Supremacy Clause that both federal constitutional provisions and federal statutes and treaties take precedence over conflicting state statutes. *See id.* at 62–64. Judge Doyle thus concluded that "the doctrine of state immunity from suit . . . is not a bar to an action against an agency or officers of state government to enjoin them from invading rights . . . with which a state statute is allegedly in conflict." *Id.* at 64. *See also Georgia R. & Banking Co. v. Redwine,* 342 U.S. 299, 304 n. 15, 72 S.Ct. 321, 96 L.Ed. 335 (1952) (*Larson* cited as authority for proposition that suits against officials are permitted to enjoin actions violating the Contracts Clause of the Constitution).

cl. 2.[7] This allegation tracks the *Larson* requirement precisely and the Court holds that it is legally sufficient to come within the *Larson* exception to the general prohibition of suits against the sovereign.

■ Plaintiffs' allegations also raise the claim that defendant's conduct is *ultra vires* under Rhode Island law. This claim, which satisfies the other branch of the test in *Larson, supra,* might be sustained on the theory that the Congressional policy embodied in the Indian Nonintercourse Act is also, by operation of the Supremacy Clause, the policy of the State of Rhode Island, just as if the Act had emanated from the Rhode Island legislature. *See Mondou v. New York, New Haven & Hartford Railroad Co.,* 223 U.S. 1, 57, 32 S.Ct. 169, 56 L.Ed. 327 (1912). Under this reasoning, it would be accurate to say that the State of Rhode Island has empowered defendant to maintain custody of public lands generally but not of lands protected by the Indian Nonintercourse Act. Such a claim, however, is merely a variant of the claim of constitutionally void action. The point is that, whether viewed as a claim of *ultra vires* action or as a claim of constitutionally void action, plaintiffs' allegations are sufficient in law to withstand a motion to dismiss on grounds of sovereign immunity.

Defendant raises a second argument in moving for dismissal. He contends that even if plaintiffs' allegations come within the *Larson* exception to the rule of sovereign immunity, suit is nevertheless barred by other language in the *Larson* opinion:

> Of course, a suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property. *North Carolina v. Temple,*

1890, 134 U.S. 22, 10 S.Ct. 509, 33 L.Ed. 849.

*Larson, supra,* 337 U.S. at 691 n. 11, 69 S.Ct. at 1462.

■ The Court is not persuaded that the relief sought in the present case would require either "affirmative action by the sovereign" or "the disposition of unquestionably sovereign property" and thus concludes that this "troublesome footnote," L. Jaffe, Judicial Control of Administrative Action 226, is without application here.

*North Carolina v. Temple, supra,* cited in the *Larson* footnote, was a case in which bondholders sought specific performance of a contract in which the State of North Carolina had agreed to levy a special tax and pay the proceeds thereof to plaintiffs as interest on their bonds. The state later repealed the tax and ordered the money already collected to be transferred to the state's general fund. Plaintiffs successfully argued in the court below that conduct of the named defendants (the governor, attorney-general, and state auditor) violated the Contracts Clause, U.S.Const., art. 1, § 10. The lower court granted a money judgment against the state, *compare Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and ordered the state auditor "to execute the provisions of [the repealed tax statute] so far as such execution may be necessary to satisfy this decree." *North Carolina v. Temple, supra,* 134 U.S. at 26–27, 10 S.Ct. at 511. The Supreme Court reversed with directions to dismiss the suit as "virtually against the state." *Id.* at 30, 10 S.Ct. 509.

If plaintiffs in the case at bar sought an order directing defendant to pay them money damages from state funds or to deed them other state lands to replace those alleged to have been wrongfully taken from them, then *they would present a case analogous to Temple* and the *Larson* footnote would doubtless apply and bar such relief.

---

7. This portion of the complaint also alleges a violation of Article I, section 10, clause 3 of the Constitution, which empowers Congress to regulate commerce with the Indian tribes. No argument based on this clause is now pressed by plaintiffs, and the Court will treat this allegation as surplusage.

This, however, is not the relief that plaintiffs seek. Rather they ask the Court to rule that, as between plaintiffs and a state official whom they allege to be acting unconstitutionally or *ultra vires,* plaintiffs are entitled to possession of land they claim has belonged to them from time immemorial and has never belonged to the state.[8]

The *Larson* footnote did not affect such claims. *Malone v. Bowdoin,* 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962), which was decided on the authority of *Larson,* makes it quite clear that an action for possession will lie against a government official for land held in an official capacity provided the requirements of *Larson,* discussed earlier, are met.[9] *See Malone v. Bowdoin, supra,* 369 U.S. at 647–649, 82 S.Ct. 980.

Thus, plaintiffs' complaint comes within the exception to the sovereign immunity doctrine preserved in *Larson.* The relief

---

**8.** Defendant argues that any decree awarding possession of the disputed land to plaintiffs would of necessity invade the state's sovereignty because legal title to the land is in the state. There might be some merit to this contention but for the fact that, as the Court has already held in this case, Indian title is a matter of federal law. *Narragansett I,* 418 F.Supp. at 803–804; *see Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 670, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).

If plaintiff's prove their case they will have established that the land they seek is and always has been Indian land. Fee title to such land is vested in the United States. The right of occupancy of such land, known as Indian title, belongs to the Indian tribes and can only be extinguished by the United States. *See Oneida, supra,* 414 U.S. at 667, 94 S.Ct. 772. As a consequence, any contrary provisions of any state law, including the state law of title, are null and void. *See id.*

The fact that the instant case poses a question of federal law likewise disposes of defendant's notion that the state law of ejectment has any relevance with respect to the "real nature" of the relief sought by plaintiffs. Thus *Stanley v. Schwalby,* 162 U.S. 255, 16 S.Ct. 754, 40 L.Ed. 960 (1896), relied on by defendant, is not on point. In that case, the Court held that the remedy of ejectment was unavailable to plaintiffs because, under Texas law, which was controlling, ejectment would not only have put plaintiffs in possession of land as against the defendant United States officials who claimed the land on behalf of the United States, but it would also have divested the United States of title in derogation of its sovereignty. In the case at bar, if plaintiffs' factual allegations are correct, title will never have left the United States nor passed to the state.

**9.** Defendant's attempt to read *Malone v. Bowdoin* as further tightening the pleading requirements set out in *Larson* and discussed above is unsuccessful. *Malone v. Bowdoin,* as the Court reads the case, simply echoes the view of *Larson* that the vice of *Lee* was its apparent holding that any allegation of an illegal taking, whether the illegality was founded upon a statutory or constitutional violation or whether it was merely tortious, mistaken or in breach of contract is sufficient to wrest property from the hands of the government.

The other cases relied upon by defendant in support of the above view, *Hawaii v. Gordon,* 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963); *Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); *Fresno v. California,* 372 U.S. 627, 83 S.Ct. 996, 10 L.Ed.2d 28 (1963); *Sierra Club v. Hickel,* 467 F.2d 1048 (6th Cir. 1972), *cert. denied,* 411 U.S. 920, 93 S.Ct. 1545, 36 L.Ed.2d 313 (1973), are likewise, as plaintiffs demonstrate, inapposite. In none of these cases is there any allegation that the official being sued exceeded his or her statutory or constitutional powers.

*Knight v. State of New York,* 443 F.2d 415 (2d Cir. 1970), also relied on by defendant, differs crucially from the case at bar. In *Knight,* plaintiff challenged, on procedural due process grounds, the validity of a state law which vested title to condemned property in the state without notice to the property owner or a hearing on the propriety of the taking. The *Knight* court held that it would have been open to plaintiff to seek to enjoin the condemnation before it occurred but that footnote eleven of *Larson* barred him from seeking the property's return once title had vested in the state by operation of state law. In the present case, if plaintiffs' factual allegations are true, title to the disputed land can never vest in the State of Rhode Island without the permission of the federal government, *see* note 8 *supra,* and thus the *Knight* holding does not apply to this case. More analogous to the present case is *West Coast Exploration Co. v. McKay,* 93 U.S.App. D.C. 307, 213 F.2d 582, *cert. denied,* 347 U.S. 989, 74 S.Ct. 850, 98 L.Ed. 1123 (1954). In *West Coast,* the court, without distinguishing between unconstitutional takings and other types of constitutional violations, held that an allegation of unconstitutional or *ultra vires* official action was sufficient to avoid the ban on suits against the government and that this result was not changed merely because the relief sought required disposition of "public lands." *Id.* at 596.

plaintiffs seek is not foreclosed by *Larson* or any other binding or persuasive authority and is indeed supported by the traditional doctrine of exceptions to the rule of sovereign immunity.

The Court has considered defendant's other arguments in support of his motion to dismiss and finds them without merit.[10]

In view of this disposition of the sovereign immunity question, it is unnecessary to discuss plaintiffs' contention that the state has consented to suit in the present case.

Defendant's motion to dismiss Civil Action No. 75–0005 is denied.

---

**10.** Defendant argues that plaintiffs' case depends upon a claim of title resting upon erroneous conclusions of state law. As discussed in note 8, *supra,* this is not the case. Plaintiffs' claim is based on federal law and upon facts, assumed to be true for the purpose of this motion, necessary to make the statute applicable to them. Defendant apparently takes the view that, in questions of mixed law and fact, the Court cannot assume the facts to be true. This is not the case. The rule is rather that "unsupported *conclusions* of law or of mixed fact and law are not [assumed to be true]." *Stanton v. United States,* 434 F.2d 1273, 1276 (5th Cir. 1970) (emphasis added). In the present case, the Court has decided, *see Narragansett I,* 418 F.Supp. at 803, 806–807, that plaintiffs are entitled to the land they seek as a matter of law if they establish certain facts.

Obviously, such facts must be assumed true for purposes of deciding the Eleventh Amendment jurisdictional issue just as they are assumed true for other preliminary purposes. *See id.* at 802.

Defendant also argues that the Indian Nonintercourse Act does not affect his present right of possession and hence cannot serve as the statutory limitation on defendant's powers that plaintiffs must specify in order to meet one branch of the pleading requirements of *Larson, supra,* 337 U.S. at 690, 69 S.Ct. 1457. This argument, a restatement of defendant's argument on previous motions that plaintiffs have failed to state a claim upon which relief can be granted, is foreclosed by a previous opinion of the Court in this case. *See Narragansett I,* 418 F.Supp. 798 at 803, 806–807.