L. Kingsley Smith, J.
In an action brought by the plaintiff, New York Telephone Company (hereinafter referred to as the "Company”), two types of relief are sought against the defendants, Town of North Hempstead and the North Hempstead Lighting District (hereinafter referred to as the "Town” and the "District”, respectively). The first cause of action seeks a money judgment against the defendants based upon the claim that from the circumstances under which the defendants attached street lighting equipment to the Company’s poles, the defendants became liable to the Company for rent of space on such poles at the rate of $10 per pole per month. The second cause of action seeks injunctive relief in the form of a direction requiring the Town and the District to remove the street lighting equipment from the Company’s poles.
The amended answer, in addition to setting forth general denials, contains six affirmative defenses, the last three of *489 which are also pleaded as the first, second and third counterclaims. The plaintiffs reply contains denials directed to the affirmative defenses and counterclaims and also sets forth a total of 11 affirmative defenses variously addressed to the 3 counterclaims pleaded by the defendants.
The plaintiff has brought a motion seeking summary judgment in its favor on the second cause of action (removal of lighting equipment from its poles) and to dismiss the defendants’ first, third, fourth, fifth and sixth affirmative defenses as well as all of the defendants’ counterclaims. By separate motion, the Town and District seek summary judgment dismissing the Company’s first and second causes of action and judgment in favor of the defendants on their first and second counterclaims.
There is little disagreement between the parties on the sequence of events which led to this litigation. During 1966 the Town Board of the Town of North Hempstead took action to consolidate the various lighting districts then existing in the Town into a single lighting district known as the North Hempstead Lighting District. Prior to the establishment of the consolidated single district, street lighting had been furnished in the various unincorporated areas of the Town of North Hempstead by the Long Island Lighting Company (hereinafter referred to as "LILCO”). Apparently, the purpose of forming the single district for the entire township was to lay the basis of having the Town, through its single lighting district, own, install and maintain its own street lighting fixtures.
In 1969 the Town took several steps in connection with providing street lighting within the township. On January 14, 1969 the Town Board adopted Resolution 32-1969 which authorized public bidding for a contract to install street lighting equipment in the unincorporated areas of the Town. The plans and specifications of such contract provided for the installation of street lights on various utility poles including those owned by the Company, located on public streets within the Town. Prior to that time installations of street lighting equipment had been made by LILCO pursuant to work orders signed by a town official and the installations were made on poles, some of which were owned by the Company and others by LILCO. On March 18, 1969 the Town Board accepted the bid of Broadway Maintenance Corporation for the earlier mentioned contract. It also appears that a similar contract with Broadway Maintenance Corporation was authorized by *490 the Town Board and executed by the supervisor of the Town for a period commencing in 1972 and continuing thereafter.
In order to have space on utility poles for the attachment of street lighting equipment, the Town in behalf of the District, entered into a pole attachment agreement with LILCO dated July 1, 1969. That agreement permitted the Town and District to attach street lighting equipment not only to poles owned by LILCO but also poles owned by the Company. The reason why attachments could be made to poles owned by the Company was that as of July 1, 1969 the Company and LILCO were parties to an agreement dated July 1, 1954 relating to the joint use of poles. Under the terms of that agreement, if a third party wanted to attach an electrical supply circuit to jointly used poles, then the agreement or contract for such attachment was to be made by LILCO with the third party. Thus, under the 1969 agreement between the Town and LILCO approximately 75 street lighting fixtures were installed on poles owned by the Company.
In December, 1969 the Company and LILCO entered into a new joint-use pole agreement, which by its terms became effective January 1, 1969. This new agreement provided that LILCO would have the right to enter into all license agreements for the use of its poles for any purpose and, similarly, that the Company would have the right to enter, into license agreements for the use of its poles for any purpose,
In connection with the plans of the Town and its District to go forward with the installation of street lighting equipment, the Town’s professional engineer wrote to the Company’s special studies engineer on July 15, 1969 requesting permission to install street lighting fixtures on Company-owned poles. The letter mentioned that the Town and its District had been informed by LILCO that the agreement which the Town had with LILCO would not include pole attachments on Company-owned poles made after May 31, 1969. Negotiations between the Town and the Company followed, the purpose of which was to arrive at an agreement between the parties covering the attachment of street lighting equipment to Company poles. During these negotiations, a proposed agreement was presented to the Town by the Company which was rejected. Between July 15, 1969 when the Town requested permission to make attachments to Company-owned poles and July 9, 1971 the Town and District caused street lighting equipment to be attached to Company-owned poles although *491 no agreement had been concluded between the Town and the Company for that purpose. On July 9, 1971 the Company wrote to the Town setting forth its version of how matters stood in reference to the attachment of street lighting equipment on Company-owned poles. In that letter the Company reviewed briefly its version of what had taken place in reference to a proposed agreement; called attention to the attachment of street lighting equipment to its poles without its permission; stated its intention not to deny the use of Company poles to authorized licensees provided there was a suitable attachment agreement; and requested removal of street lighting fixtures from Company-owned poles before August 15, 1971. The letter further informed the Town that if the street lighting equipment remained on the poles after August 15, 1971 the Company would consider the Town a tenant at the rate of $10 per pole per month, or fraction thereof, as long as the attachments remained on the poles.
It is undisputed that the Town and District did not accede to the Company’s request to remove the street lighting equipment from the Company’s poles; nor is it disputed that the Company made certain demands after August 15, 1971 for rental charges claimed to be due and owing by reason of street lighting equipment not having been removed from the poles and the Town and District failed to pay such charges. Thereafter, this action was commenced in the latter part of November, 1973.
It is important to note the positions of the plaintiff and the defendants in respect of the first cause of action in plaintiff’s complaint. The plaintiff in its motion has not sought summary judgment on the first cause of action because it recognizes that there may be triable issues of fact which must be determined before a finding can be made that there was an agreement between the parties requiring the payment of rental charges for occupation of space on Company-owned poles. The defendants, however, by their motion, seek to dismiss the plaintiff’s first cause of action and urge several grounds to support their claim that the plaintiff has no cause of action against them for the claimed rental charges. Certain of the grounds urged in support of the defendants’ motion to dismiss the first cause of action are also relied upon by the defendants to support those branches of its motion which seek a dismissal of the plaintiff’s second cause of action and summary judgment in their favor on the first and second counterclaims. In *492 the circumstances thus presented, the court will first treat the plaintiff’s motion which, in effect, seeks to strike affirmative defenses and to dismiss counterclaims of the defendants. In proceeding this way, the court temporarily defers consideration of the first branch of plaintiff’s motion which seeks summary judgment on the second cause of action for injunctive relief.
The plaintiff seeks summary judgment in its favor as to the deféndants’ first affirmative defense on the ground that such defense lacks merit. The gist of the first defense is that the rental demanded by the plaintiff is a "unilateral” charge imposed by the plaintiff for services in relation to telephone lines without the consent of the Public Service Commission. It is claimed that the lack of such consent from the Public Service Commission makes such rental invalid and unenforceable in this action.
This defense is without merit for the reasons stated below. The Public Service Commission has not exercised jurisdiction over charges made by the plaintiff for the use by third parties of its poles. There are no tariffs filed by the plaintiff with the Public Service Commission covering such charges or rentals. The matter of Public Service Commission jurisdiction was considered in Matter of Ceracche Tel. Corp. v Public Serv. Comm. (49 Misc 2d 554) and decided adversely to the position urged by the defendants in this action. In that case the petitioner attempted to have the Public Service Commission take jurisdiction over the use of telephone poles as a means of attaching community antenna television lines to serve television subscribers. When the Public Service Commission denied petitioner’s request, a review by an article 78 proceeding was sought. In discussing the claim that a pole agreement between the petitioner and the telephone company was subject to regulation by the Public Service Commission, the court found that the Public Service Commission’s jurisdiction is strictly limited by statute; that the scope of such jurisdiction extends only to "the regulation by the Commission of the business of affording telephonic communication for hire.” (Matter of Ceracche Tel. Corp. v Public Serv. Comm., supra, p 556.) That finding was made despite the fact that the definition of "telephone lines” set forth in subdivision 18 of section 2 of the Public Service Law includes the word "poles”. In the court’s opinion, the determination in the Ceracche case is controlling here.
*493 The defendants urge in their memorandum submitted on these motions that if the court rejects their claim that plaintiff is subject to Public Service Commission jurisdiction in the matter of charges for space on its poles, it must nevertheless conclude that the plaintiff may only use its poles for telephone purposes and that the use of the poles for purposes other than that for which the plaintiff was granted a special franchise under section 27 of the Transportation Corporations Law is beyond its powers. This argument lacks merit. The thrust of this claim is that the special franchise granted to plaintiff by section 27 of the Transportation Corporations Law gives the plaintiff the right to erect, construct and maintain the necessary fixtures for its telephone lines in the public roads, streets and highways. It is argued further that the words "necessary fixtures” can only relate to plaintiff’s use of telephone lines for telephone purposes as indicated by the definition of a telephone company contained in section 25 of the Transportation Corporations Law. Therefore, the argument runs, the plaintiff’s special franchise permitted it to use public streets only for the purpose of providing telephone service and for no other purpose. This narrow construction of the statute granting the special franchise is not supported by the statute’s language. That is to say, there is no express prohibition against the use of the "necessary fixtures” such as poles for purposes other than telephonic communication. Moreover, the plaintiff’s certificate of incorporation contains a grant of power to use its equipment for purposes other than providing telephonic communication. In addition, as a result of subdivision (a) of section 4 of the Transportation Corporations Law making the plaintiff subject to the provisions of the Business Corporation Law, the plaintiff possesses the right to enter into contractual arrangements with others for the use of space on its poles pursuant to the powers granted in subdivision (a) of section 202 of the Business Corporation Law. Finally, it may be observed in passing that there is a certain inconsistency in the defendants’ claim of ultra vires when they have in the past accepted the benefits of the use of plaintiff’s poles for street lighting purposes without having raised such argument. So much of the plaintiff’s motion as is directed at the defendants’ first affirmative defense is granted and said affirmative defense is stricken.
As part of its motion the plaintiff attacks the defendants’ third affirmative defense which was interposed as a defense to *494 both the first and second causes of action. That defense asserts that the plaintiff owns and operates "telephone lines” (as defined by the Public Service Law) in other portions of the State of New York and permits others, including municipal and governmental agencies, to use its telephone lines for the purpose of attaching lighting and communications equipment thereto. This defense further asserts that in requiring "rent” from the defendants the plaintiff discriminates against the defendants in comparison to others without cause and in violation of law.
In their memorandum the defendants expressly state that this defense depends for its validity upon the charges for pole attachments being within the jurisdiction of the Public Service Commission. Inasmuch as the court, in disposing of the first affirmative defense, has found that such charges do not lie within the jurisdiction of the Public Service Commission, this third affirmative defense must be found to be without merit. Accordingly, so much of the plaintiff’s motion as is directed to the third affirmative defense is granted and the defense is stricken.
A further branch of the plaintiff’s motion attacks the defendants’ fourth affirmative defense which is also pleaded as their first counterclaim. This defense and counterclaim seeks to justify the attachment of street lighting equipment to plaintiff’s poles as a de facto exercise of the Town’s police power required for the protection of the public health, safety and welfare of the Town’s citizens. It is claimed that any injury or damage sustained by the plaintiff is not compensable because of such allegedly valid exercise of police power.
In putting forth this defense and counterclaim, the defendants first urge that the plaintiff’s right to erect and maintain fixtures on, under and over Town highways is derived from section 27 of the Transportation Corporations Law. Because such right, for tax purposes, is defined by subdivision 17 of section 102 of the Real Property Tax Law as a "special franchise” the defendants assert that this special franchise is an interest in real property being either an "easement in gross” or "an incorporeal heriditament” or both. Proceeding then from the position that the plaintiff’s right to erect and maintain poles in the Town highway is an interest in real property, the defendants assert that what they did in connection with the poles, i.e., attachment of their street lighting equipment, constituted (1) a physical entry upon the plaintiff’s *495 interest in real property and (2) a "legal interference” with the plaintiffs physical use, possession or enjoyment of its rights in real property. This, the defendants assert, is the acquisition of an easement in the plaintiffs special franchise for the purpose of permitting the Town, its lighting district and other municipalities within the Town to install and maintain "municipal apparatus” on the plaintiffs poles. This easement in favor of the Town, lighting district and other municipalities, the defendants further assert, is subject to the plaintiffs right to install, maintain, remove and replace its poles and to use such poles for its own public utility purposes and those of its tenants and licensees. The defendants also assert that their acquisition of the foregoing easement is subject to the further limitation that the "municipal apparatus” to be installed shall not be installed on more than 40% of the total number of plaintiffs poles at any time. This latter limitation is significant because inherent in it, when read with defendants’ definition of the term "municipal apparatus”, is the assertion that this claimed easement in plaintiffs special franchise is a right in the Town, its lighting district and other municipalities within the Town to make attachments to present and future poles for street lighting, fire alarm systems, police telephone and telegraphic systems and all other similar equipment, fixtures, appurtenances and facilities owned or leased by such entities.
The strongest argument running counter to the claim of a valid exercise of police power is the assertion in this defense and counterclaim that the Town’s actions constituted "acquiring an easement.” Acquisition is a taking as opposed to a regulation exercised under police power. Without conceding the validity of the defendants’ claim that plaintiffs franchise to erect and maintain poles in the public highway is an interest in real property, the fact remains that even if it is, the Town lacks the power to acquire an interest therein without giving fair compensation. The use of plaintiffs poles for defendants’ street lighting equipment cannot be justified as a valid exercise of the Town’s police power. (Cf. New York Tel. Co. v City of Binghamton, 18 NY2d 152.) Moreover, on the undisputed facts before the court, the attempt to justify use of plaintiffs poles on that basis after this litigation was instituted is inconsistent with the position taken by the Town in its dealings with the plaintiff before this action was started. It is also conspicuously inconsistent with the course of action *496 followed by the Town in its dealings with LILCO which culminated in an agreement covering use of space on that utility’s poles for street lighting equipment. The fourth affirmative defense and first counterclaim are therefore found to be without merit. That portion of the plaintiffs motion directed at such defense and counterclaim is granted and the fourth affirmative defense is stricken and insofar as it is pleaded as the first counterclaim it is dismissed.
Plaintiff’s motion also attacks the fifth affirmative defense also pleaded as the second counterclaim. This defense and counterclaim realleges paragraphs 11 through 19 of the amended answer, such paragraphs constituting the fourth defense and first counterclaim. The defendants then ask for alternative relief if the court rejects the defendants’ claim of an exercise of police power, i.e., that the court render judgment declaring that the defendants have acquired an interest in plaintiff’s franchise by reason of a de facto exercise of the power of eminent domain.
In testing the validity of this defense and counterclaim, there are certain preliminary questions which must be resolved. The first of these relates to the power of eminent domain, if any, possessed by a town lighting district. Such a district is an "improvement district” under the Town Law. (Town Law, §§ 190, 209-a.) Improvement districts are governed by town improvement district commissioners who have enumerated statutory powers and duties. (Town Law, § 215.) It is also provided that the Town Board may, in lieu of lighting district commissioners, discharge the functions of commissioners itself. (Town Law, § 206.) One of the powers granted to improvement district commissioners, including lighting district commissioners is that of the power to acquire real property by condemnation. (Town Law, § 215, subd 5.) There is no express power granted by the Town Law to improvement district commissioners to acquire personal property by condemnation. It appears from subdivision 6 of section 198 of the Town Law that the Town Board itself possesses certain power specifically related to lighting districts in that it is empowered to contract for lighting and to purchase lighting standards at district expense and to contract for the installation and maintenance of such equipment and for the supply of electricity or gas for the lighting equipment. Because of the provisions contained in subdivision 19 of section 215 of the Town Law, the lighting district commissioners can exercise the power of *497 the Town Board in respect of contracting for lighting standards and a source of lighting energy if the Town Board delegates such power to them. The statutory scheme thus appears to be clear. As to real property necessary for the functioning of a lighting district, there is a power to acquire by means of condemnation. With respect to the acquisition of personal property necessary to provide street lighting, the statute contemplates that such personal property will be acquired or obtained by purchase or by means of contract. From this it seems evident that no statutory power to condemn any property interest other than an interest in real property has been granted to the lighting district or to the Town itself. Wholly apart from the powers specifically referable to improvement districts, there does exist a general power conferred upon the Town Board to acquire by condemnation "lands or rights therein” (Town Law, § 64, subd 2). But here, again, no express power has been conferred to acquire personal property by condemnation. Statutes which delegate the sovereign power of eminent domain are generally construed strictly and the power so delegated is not to be extended by inference or implication. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 293, pp 451-453; see, also, Schulman v People, 10 NY2d 249.) In the light of these principles the conclusion has to be that no power to condemn personal property has been conferred upon the Town or its municipal subdivisions.
If the defendants do not have the power to condemn personal property then to support a theory of de facto condemnation the defendants must establish that what has been taken is real property or an interest therein. The claim of the defendants does not seem to be that the poles themselves constitute realty, but rather that the poles are components of the special franchise which the State of New York has granted to the plaintiff to place and maintain apparatus on public streets in order to carry out its function of supplying telephone service. The defendants therefore contend that when they went ahead and attached lighting equipment to the plaintiff’s poles, they made a "physical entry” on certain of the rights enjoyed by the plaintiff under its special franchise and carried out a "legal interference” with the plaintiff’s physical use, possession or enjoyment of certain of the rights possessed by the plaintiff in its special franchise. This limited entry upon and interference with plaintiff’s special franchise constituted a de facto taking of an interest in real property *498 because, according to the defendants, the special franchise held by the plaintiff is itself an interest in real property which the defendants allege is an "easement in gross” or an "incorporeal hereditament” or both.
In contending that plaintiff’s franchise is an interest in real property the defendants rely on decisions which antedated the decision of the Court of Appeals in New York Tel. Co. v City of Binghamton (18 NY2d 152, supra) which was decided in 1966. The earlier decisions of Levy v McClellan (196 NY 178) and Kronsbein v City of Rochester (76 App Div 494) were each cases involving a special purpose tax statute and a consideration of a special franchise in a situation where the tax statute classified the franchise as "real property” for purposes of real estate taxation. It is the position of the plaintiff that the expressions found in Levy and Kronsbein (supra) to the effect that a special franchise is an interest in real property have been overruled by New York Tel. Co. v City of Binghamton (supra). The plaintiff concedes that before the last-mentioned decision was handed down, it could have been argued with some force that the privileges granted under section 27 of the Transportation Corporations Law were real property rights or "interests in land.” However, it appears that New York Tel. Co. v City of Binghamton (supra, p 162) has established that what the plaintiff has is "a mere privilege or permit to use part of the street for a special purpose”. In establishing this principle, the court further noted that earlier expressions of the court may be limited to their "special holding” that under appropriate circumstances compensation should be provided for compulsory removal of utility facilities. Accordingly, this court concludes that such a license, privilege or permit to use the public streets is not an interest in real property. (See American Rapid Tel. Co. v Hess, 125 NY 641; Mumford v Whitney, 15 Wend 380; Wiseman v Lucksinger, 84 NY 31; Reeve v Duryee, 144 App Div 647; Public Serv. Comm. v Booth, 170 App Div 590; 1A Thompson, Real Property, §§ 216-217 [1964 Replacement].)
It is to be remembered that the interests of the plaintiff against which defendants claim to have exerted, de facto, the power of eminent domain is the plaintiff’s special franchise to use the public streets as distinguished from individual telephone poles. In view of the court’s finding that the plaintiff’s special franchise is not an interest in real property and therefore not subject to condemnation by the defendants, it is *499 not deemed necessary to discuss in detail the question of whether the poles are personalty or part of the realty on which they áre placed. Suffice it to say, that apart from the inclusion of telephone poles within the definition of "real property” in the Real Property Tax Law, a special purpose statute, all other attributes of the poles suggest that they are personalty and are so treated in the day-to-day operation of the plaintiffs business.
For the reasons indicated, that portion of the plaintiffs motion which has attacked the fifth affirmative defense and second counterclaim as lacking in merit is granted and such defense is stricken and the counterclaim dismissed.
In still another branch of its motion the plaintiff has challenged that portion of the amended answer which is labeled the sixth defense and third counterclaim. In this defense and counterclaim the defendants assert that the plaintiff is not permitted to discriminate in its charges for telephone service by giving advantages, preferences, or by making different charges to certain customers in the same class of customer for the same services. It is further asserted that the charges which the plaintiff makes for telephone service furnished to the Town are different and higher than those charged other municipal governmental bodies. The defendants allege that such charges are illegal, unreasonable, and discriminatory against the Town and in violation of the law. As a result, it is alleged that the Town has been damaged and compensatory damages are sought.
In the memorandum submitted by the defendants, it is conceded that cognizance of "this counterclaim will usually lie only in the Public Service Commission and the Appellate Division Third Department.” This appears to be an acceptance of the position taken by the plaintiff that this court has no jurisdiction over a claim for back damages due to discrimination in the granting of municipal discounts. (Purcell v New York Cent R. R. Co., 268 NY 164, cert den 296 US 545.) The plaintiff contends that the defendants’ claim for municipal discounts has already been adjudicated in a proceeding before the Public Service Commission in which the Town appeared and participated. With this position the court agrees and finds that the Town is bound by the determination made by the Public Service Commission in that proceeding. In the court’s opinion, the provisions of CPLR 3011 and 3019 do not-confer jurisdiction upon the court nor do they relieve the Town of *500 the binding effect of the determination made by the Public Service Commission. Accordingly, that portion of the plaintiff’s motion which is addressed to the sixth defense and third counterclaim is granted and the said defense is stricken and the said counterclaim dismissed.
Having disposed of other branches of the plaintiff’s motion, there remains for consideration the first branch of its motion which seeks summary judgment in favor of the plaintiff against the defendants on the second cause of action set forth in the complaint on the ground that there are no triable issues of fact. The second cause of action, as earlier noted, seeks relief by way of a mandatory injunction compelling the defendants to remove street lighting equipment which they have caused to be attached to the plaintiff’s telephone poles. While the plaintiff has sought summary judgment in respect of the second cause of action for injunctive relief, it has not sought similar summary relief in respect of its first cause of action wherein the claim for rental charges is asserted. The papers submitted in behalf of the plaintiff on its motion clearly indicate that the plaintiff has taken into account the possibility that a court might conclude that triable issues of fact are presented in connection with the first cause of action. An examination of the submissions of the parties reveals sharply conflicting views about the plaintiff’s first cause of action. It is the position of the defendants that the plaintiff made a unilateral determination to treat the defendants as tenants of the space on the poles to which the defendants’ street lighting equipment was attached. The plaintiff, on the other hand, claims that the basis of its first cause of action is grounded on principles of offer and acceptance which resulted in a binding contract to pay rent. The plaintiff points to a number of circumstances and events which it claims in their totality demonstrate an offer made by the plaintiff and accepted by the defendants. The court is of the opinion that triable issues of fact are presented as to whether from the dealings of the parties a contractual arrangement resulted which obligated the defendants to pay rental charges for the use of the plaintiff’s poles. If the plaintiff should be successful in establishing its right to rental charges, it would have demonstrated the existence of an adequate remedy of law and at the same time fallen short of establishing. a necessary element to justify equitable relief by way of injunction.
*501 The last branch of plaintiffs motion requests an order pursuant to CPLR 3212 (subd [e], par 1) severing the plaintiffs first cause of action from its second cause of action. As a result of the determinations already made by the court herein, the defenses and counterclaims interposed by the defendants, except those specifically addressed to the first cause of action, have been stricken. This means, in essence, that no triable issues of fact are raised as to the merits of the plaintiffs second cause of action for injunctive relief. While the plaintiff in this respect must be found entitled to summary judgment, it does not follow that such relief should be immediately granted. As earlier noted, mandatory injunctive relief requiring removal of street lighting equipment from the plaintiffs poles would, in any view of the matter, constitute a drastic form of relief. CPLR 3212 (subd [e], par 2) authorizes the court to direct that the entry of summary judgment as to a particular cause of action be held in abeyance pending the determination of any remaining cause of action. With that provision in mind, the court grants summary judgment in favor of the plaintiff against the defendants on the second cause of action upon the ground that there are no triable issues of fact but directs that the entry of judgment shall be held in abeyance pending the determination to be made in respect of the first cause of action and for that purpose further directs that the second cause of action be severed from the first cause of action. In the event that the plaintiff prevails on its first cause of action, it will have been established that it has an adequate remedy at law and that equitable intervention is unnecessary. In that event, summary judgment on the second cause of action should not be entered. Conversely, if the plaintiff does not prevail on its first cause of action, it will nevertheless be entitled to relief on the second cause of action.
In treating the various aspects of the plaintiff’s motion, the court has stricken all of the affirmative defenses set forth in the amended answer of the defendants except the second defense which is addressed to the plaintiff’s first cause of action. In addition, the court has, in considering and determining the plaintiff’s motion, dismissed all counterclaims asserted in the answer of the defendants. It therefore follows that the motion of the defendants for summary judgment must be, in all respects, denied.